[Cite as *Cramer v. Bobula*, 2026-Ohio-2538.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MARILYN A. CRAMER, FKA BOBULA,   :

     Plaintiff-Appellant,   :

                                         No. 115447

     v.   :

GEORGE BOBULA,   :

     Defendant-Appellee.   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** July 2, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-00-276062

---

### *Appearances:*

Cavitch, Familo & Durkin Co., LPA, and Bradley Hull, IV,
*for appellant.*

Zashin & Rich Co., LPA, and Jonathan A. Rich, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1}   Plaintiff-appellant Marilyn A. Cramer ("Wife") appeals the trial court's decision overruling her objections and affirming the magistrate's decision after the trial court found that defendant-appellee George Bobula ("Husband") did

not default on the parties' separation agreement, thus denying her attorney fees, but modifying the magistrate's decision by not finding Husband in contempt. Finding some merit to the appeal, this court affirms in part, reverses in part, and remands for further proceedings to consider and impose an award of attorney fees and a contempt penalty.

## I.  Procedural Background

### A. Judgment of Divorce and Separation Agreement

{¶ 2}   On April 30, 2002, the parties were granted a divorce.  The parties entered into a separation agreement that was incorporated into the judgment entry of divorce (collectively "divorce decree").  Relevant to this appeal, the separation agreement provided for the division of "pension and/or retirement plans:"

> Husband and Wife will execute a Qualifying Domestic Relations Order with respect to Husband's Civil Service Retirement System ["CSRS"] retirement benefits in which;
>
> (a) Wife will be designated as Husband's survivor with respect to the 55% joint and survivor annuity.
>
> (b) The parties' two [adult] children . . . will be designated as equal alternate beneficiaries, per stirpes, to this survivor annuity in the event Wife predeceases Husband.
>
> (c) Until the joint and survivor annuity shall take effect, Wife will receive 21% of Husband's annual accrued benefit as set forth in his 2002 Personal Benefits Statement, Form PBA 10, plus all cost of living adjustments applicable to her 21% of these benefits.  Wife will begin receiving these benefits upon Husband's retirement.  Husband will receive the balance of said accrued account.

{¶ 3}   The separation agreement also provided for attorney fees and court costs, with both being responsible for their own attorney fees, but Husband would

be responsible for court costs. However, in the event of enforcement of the agreement, the separation agreement provided:

> That if either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provision of this Agreement, then in such case, the party found to be in default shall pay the expenses, including reasonable attorney fees, incurred in connections with such enforcement proceedings.

{¶ 4} The final relevant provision for purposes of this appeal is that the separation agreement "shall not be altered, changed, or modified except in writing signed by both parties."

**B. The COAPs**

{¶ 5} In July 2004, Wife's counsel executed and approved the trial court's "Court Order Acceptable For Processing Under the Federal Employees Retirement System," (hereinafter "COAP") which created the order that would allow Wife to receive her portion of Husband's retirement benefits, exactly as provided in the separation agreement, which incorporated the separation agreement's stated percentages, not any specific dollar amount. Husband's counsel did not sign the COAP, but the order noted that the COAP was "forwarded per Local Rule [dated] 7-2-04." No one disputes that the parties agreed to the 2004 COAP.

{¶ 6} The COAP further authorized the trial court to have continuing jurisdiction over the order and "to enter such further orders as necessary to enforce the award to Former Spouse of the benefits awarded herein." Finally, the COAP required Husband to notify Wife of his retirement, as follows:

16. <u>Notice of Pending Retirement</u>. [Husband] shall be required to notify [Wife] in writing, within thirty (30) days prior to his actual date of retirement. Such notice shall indicate his intentions to retire and his elected benefit commencement date. The notice shall be sent via regular, first class mail. For this purpose, [Wife] shall notify [Husband] of any changed [sic] in [Wife's] mailing address.

{¶ 7} In February 2016, an amended COAP was filed with the trial court. Although Husband's counsel approved the amended COAP, the document only provided that it was submitted to Wife's counsel and had not received a response. A review of both the 2004 COAP and the 2016 COAP reveal that they are identical in substance, with only Husband's address being changed.

## C. Wife Moves to Show Cause in 2017

{¶ 8} On June 5, 2017, Wife filed a motion to show cause and for attorney fees, claiming that Husband violated court orders concerning division of his pension, specifically that he did not (1) provide the requisite notice of his intent to retire; (2) provide his effective date of retirement and information concerning his pension so she could receive her 21% share; (3) immediately forward her 21% share of his pension, plus cost-of-living adjustments ("COLAs"); and (4) name her as the 55% joint and survivor beneficiary and their adult children as contingent beneficiaries. In response, Husband filed his own motion for attorney fees, contending that Wife was aware of his retirement and the delay in receiving her share of pension benefits was beyond his control because the retirement system dispersed benefits.

{¶ 9} This dispute ended after the parties notified the court in October 2017 that they had reached a settlement. The court subsequently dismissed both parties'

motions in December 2017 when the parties failed to file an agreed judgment entry with the court as previously ordered.

### D. Wife Moves to Show Cause in 2024

{¶ 10} Approximately seven years later in April 2024, Wife filed another motion to show cause and requested attorney fees and sanctions, making the same claims as before — that Husband violated the terms of the divorce decree by failing to (1) notify her in writing of his intent to retire; (2) notify her of his effective date of retirement and provide information concerning his pension so she could receive her 21% share; (3) immediately forward her 21% share of his pension, plus COLAs; and (4) failing to name her as the 55% joint and survivor beneficiary and their adult children as contingent beneficiaries.

{¶ 11} On July 10, 2024, Husband moved to adopt a newly proposed COAP, which converted the percentages to a dollar amount. Husband's motion explained how Wife's benefit was calculated and considered the COLAs Wife was entitled to receive under the divorce decree. Attached to the motion was (1) the proposed COAP, calculating Wife's benefits at $1,956.41 per month; (2) a June 2002 letter from the Department of the Navy, estimating his annuity based on a proposed 2002 retirement date; and (3) a QDRO Group's worksheet calculating Wife's benefit with the cost-of-living amount. The content of the proposed COAP, however, differed from the prior COAPs submitted by the parties.

{¶ 12} Wife objected to Husband's proposed COAP, contending that it contradicted the terms of the divorce decree because (1) Husband's three highest

incomes claimed were inaccurate and unsupported; (2) the calculation was based on his net pension, not his gross pension; (3) the COAP did not include their adult children as contingent beneficiaries; (4) the proposed order only read prospectively, not retroactively, and did not provide for arrearages, interest, attorney fees, and costs; (5) the proposed order unlawfully changed the divorce decree regarding overpayments to either party; (6) the COAP wrongfully attempted to reduce Wife's share of the pension by requiring her to pay half of the costs of his election of the 55% survivor's benefit — the costs were factored in when her share was reduced from 50% of his pension during his lifetime to only 21%; and (7) the order did not incorporate the separation agreement's provisions that the noncompliant party pay the complaining party's attorney fees and costs.

{¶ 13} During the pendency of this dispute, Wife submitted to a deposition on July 31, 2024, and Husband was deposed on July 31, 2024, and August 12, 2024. During the depositions, it was established that Husband did not notify Wife of his retirement in accordance with the separation agreement and that Wife had not received any money, let alone her share, from Husband's pension benefits despite Husband's retirement on January 3, 2017. It was revealed that the retirement system rejected the agreed-upon COAPs because they provided for a percentage share, rather than an actual dollar amount. Husband stated that in late 2018 after his counsel did not hear from Wife's counsel regarding this issue, he began putting aside in a bank account what he believed would be Wife's 21% share.

### E. Magistrate Conducts a Trial and Issues a Decision

{¶ 14} In September 2024, a magistrate conducted a hearing on Wife's April 2024 motions to show cause and for attorney fees and on Husband's July 2024 motion to adopt court order acceptable for processing. Husband and Wife both testified. Also testifying were Wife's attorney who testified about the reasonableness of his attorney fees; David I. Kelley, with QDRO Group, who testified as Husband's expert regarding his calculation of Wife's share of Husband's pension, including COLAs and arrearages; and Michael Dobrowski, a licensed CPA who prepared Husband's tax returns, who testified about tax consequences and liabilities associated with his pension benefits.

{¶ 15} In December 2024, the magistrate issued a written decision, granting Wife's motion to show cause, but denying her motion for attorney fees and denying Husband's motion to adopt his proposed COAP.

{¶ 16} Regarding Wife's motion to show cause, the magistrate found Husband in contempt of the divorce decree and the subsequent COAPs because Husband failed to notify Wife of his intent to retire or the amount he was entitled to receive in accordance with those orders. The magistrate ordered husband to serve five days in jail, but suspended on the condition that within 30 days he purge his contempt by (1) remitting to Wife the monies owed for the annuity; (2) using all good-faith efforts to draft, complete, and execute a corrected COAP; and (3) until the pension administrators begins remitting Wife's portion directly to her, remitting any overpayment to Wife, within ten days of receipt.

{¶ 17} Regarding attorney fees, the magistrate denied Wife's motion for attorney fees because "Wife's counsel failed to present any evidence as to the parties' respective income or expenses." The magistrate relied on R.C. 3105.73, pertaining to post-decree motions for attorney fees and its guidelines, but also quoted the Domestic Relations Local Rule 21(B), setting forth the requirements a party must present, which includes "evidence of the parties' respective incomes and expenses, if not otherwise disclosed during the hearing." The magistrate further quoted subsection (D) of the local rule that reads, "failure to comply with the provisions of this rule shall result in a denial of a request for attorney fees, unless jurisdiction to determine the issue of fees is expressly reserved in any order resulting from the hearing."

{¶ 18} Finally, the magistrate denied Husband's motion to adopt his proposed COAP. Although Wife did not present any evidence to refute Husband's expert's testimony regarding the calculation of the annuity payment and arrearages, the magistrate found that the COAP "is contrary to the letter and form of the 2004 and 2016 COAPs." The magistrate, however, recommended that the parties "take the form and language of the 2004 and 2016 COAPs, insert the precise number of $1,956.41, and sign it so that everyone can put this issue to bed."

**F. Both Parties File Multiple Objections**

{¶ 19} Wife objected to the magistrate's decision, filed preliminary objections, and requested an interim order to prevent further delays in Husband's obligations under the divorce decree. After the trial transcript was filed, Wife

supplemented her objections to the magistrate's decision, opposed Husband's supplemental objections, and moved to strike his brief in opposition to her motion for an interim order.

{¶ 20} The crux of Wife's objections challenged the magistrate allegedly exceeding the scope of his jurisdiction by modifying the divorce decree in not ordering Husband to pay Wife attorney fees and costs because Husband defaulted under the divorce decree. She further stated that the contempt penalty the magistrate imposed was too lenient and requested a 30-day jail sentence. Wife advanced that the magistrate erred in not finding that she was entitled to all COLAs and one-half of Husband's sick leave payout. Finally, she contended that the magistrate erred in not finding Husband in contempt for failing to designate the parties' adult children as contingent beneficiaries to Wife's 55% survivor share of the annuity.

{¶ 21} Husband also objected to the magistrate's decision. In his preliminary objections, he raised 18 general objections, challenging the magistrate's denial of his motion to adopt his COAP and the magistrate's finding of contempt, including purge orders. Husband supplemented his objections after the transcript was filed and opposed Wife's supplemental objections. He also opposed Wife's motion for an interim order because her request was unclear and not based on any order by the magistrate regarding the actual amounts owed to Wife — amounts she still disputed in her objections to the magistrate's decision.

{¶ 22} Relevant to this appeal, Husband challenged the magistrate's finding of contempt despite admitting that he did not notify Wife of his retirement, arguing that this issue was cured because their adult children advised Wife. He also challenged the magistrate's finding that Husband was required to notify Wife of the pension amount he was entitled to receive, arguing that this notification was not part of their divorce decree. He further admitted that Wife had not received any portion of his pension. He defended his conduct by asserting that he did not know the amount Wife was entitled to receive because the prior COAPs were rejected. According to Husband, those prior COAPs were therefore void and any notifications or obligations contained therein were unenforceable. He stated that he nevertheless "set aside" an amount in an account for Wife after a COAP was approved. He further challenged the magistrate's purge orders as being ambiguous, conditioned on future conduct, and contrary to the evidence.

## G. Trial Court Issues its Decision

{¶ 23} In July 2025, the trial court considered the parties' filings, without hearing or considering additional arguments or evidence. The court modified the magistrate's decision by sustaining husband's objection challenging the magistrate's finding of contempt. The trial court, however, approved the magistrate's decision denying Wife attorney fees. Ultimately, the court ordered Husband to pay Wife the arrearages owed and her 21% share of his pension, in the amount of $1,956.41, until an acceptable COAP was processed.

**{¶ 24}** After Husband notified the court that Wife refused acceptance of the arrearage check, the trial court granted Wife's unopposed request for a stay of the judgment, pending her appeal. Husband has not appealed the trial court's decision.

## II. The Appeal

**{¶ 25}** Wife raises eight assignments of error.

### A. Failure to Comply with App.R. 16

**{¶ 26}** At the outset, this court declines to address Wife's second, third, fifth, sixth, seventh, and eighth assignments of error because they are primarily based on conclusory statements without a complete discussion of the relevant law and applicable legal analysis as required by the appellate rules.

**{¶ 27}** App.R. 16(A)(7) requires an appellant to include in the appellate brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "'An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *Baxter v. Thomas*, 2015-Ohio-2148, ¶ 54 (8th Dist.), quoting *Rodriguez v. Rodriguez*, 2009-Ohio-3456, ¶ 4 (8th Dist.).

**{¶ 28}** To succeed on appeal, an appellant must demonstrate that the trial court committed an error by citing what the law is and showing how the trial court

fell short. *See, e.g., Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 15 (1st Dist.) ("The appellant has the burden on appeal. . . . An appellate court will not create an argument in support of an assignment of error where an appellant fails to develop one."). "The appellant cannot prove the trial court erred by 'merely setting forth conclusory statements' that claim the trial court erred." *Adams v. June*, 2021-Ohio-168, ¶ 8 (3d Dist.), quoting *In re B.P.*, 2015-Ohio-48, ¶ 10 (9th Dist.).

{¶ 29} In Wife's second assignment of error, she contends that the trial court committed reversible error in overruling her objection challenging the magistrate's decision and finding that the magistrate erred in failing to allocate the COLAs applicable to Husband's income since 2002. She supports this assignment of error with a single conclusory statement that the "evidence presented at Trial clearly indicated that the Magistrate, later upheld by the Judge, failed to allocate all COLAs to George Bobula's income since 2002."

{¶ 30} In her third assignment of error, Wife contends that the trial court committed reversible error in overruling her objection that the magistrate erred in failing to hold Husband in contempt for failing to name their adult children as "back-up alternate beneficiaries per stirpes." She supports this assignment of error with a conclusory statement about Husband's credibility and concludes that the "preponderance of the evidence" demonstrated that Husband could name their children and "existing orders" required him to do so.

{¶ 31} In her fifth assignment of error, Wife contends that the trial court committed reversible error in overruling her objection that the court failed to

consider Husband's lack of credibility, including his failure to disclose his intent to retire. Wife supports her assignment of error with a single conclusory statement that "[Husband's] credibility was entirely lacking" and the court erred in finding him credible.

{¶ 32} Wife contends in her sixth assignment of error that the trial court committed reversible error in overruling her objection that the Magistrate erred in using the net pension numbers instead of the gross numbers. Wife supports her assignment of error with a single conclusory statement that the "trial court improperly used Net Pension numbers rather than Gross without offsets."

{¶ 33} In her seventh assignment of error, Wife contends that the trial court committed reversible error in failing to consider Wife's testimony about Husband's income as "rebuttable evidence" to Husband's expert, David Kelly, regarding Husband's income. Wife fails to support her assignment of error with legal authority as to why and how her testimony should be given more credence than Husband's expert.

{¶ 34} Wife contends in her eighth assignment of error that the trial court committed reversible error in not awarding additional compensation and punitive damages against Husband. This assignment of error is merely cumulative and includes only two statements reiterating her belief about Husband's credibility and the trial court's decision not finding him in contempt.

{¶ 35} Because Wife's assignments of error do not comply with the appellate rules, we summarily reject her second, third, fifth, sixth, seventh, and eighth

assignments of error. Accordingly, any challenge to the trial court's decision regarding the issues raised in those assignments of error is overruled.

**B. Contempt Finding**

{¶ 36} The magistrate found Husband in contempt of the divorce decree and the subsequent COAPs because Husband failed to notify Wife of his intent to retire or the amount he was entitled to receive in accordance with those orders. The magistrate ordered husband to serve five days in jail, suspended on the condition that within 30 days he purge his contempt by (1) remitting to Wife the monies owed under the annuity; (2) using all good-faith efforts to draft, complete, and execute a corrected COAP; and (3) until the CSRS plan administrators begin remitting Wife's portion directly to her, remitting any overpayment to Wife within ten days of receipt.

{¶ 37} Husband raised four specific objections to the magistrate's finding him in contempt and raised four additional objections regarding the purge order imposed. Specific to this appeal, he argues that he could not be held in contempt because (1) he cured any alleged violation since Wife was notified about his retirement date prior to her filing the show cause motion and before the hearing took place; (2) neither the divorce decree nor the 2004 or 2016 COAPs required him to notify Wife as to the amount he was entitled to receive; and (3) the COAPs were nonetheless voidable and thus not enforceable because they were rejected by the administrators of the CSRS pension plan. As such, he maintains he could not be held in contempt for violating those orders and thus the magistrate erred.

{¶ 38} Wife objected to the penalty the magistrate imposed, contending that the five-day jail penalty only rewarded Husband for his contempt and disobedience. She further advanced that the parties' divorce decree provided for a 30-day jail sentence in the event of a violation.

{¶ 39} The trial court sustained Husband's objections, finding that Husband purged himself prior to being held in contempt because Wife was notified about Husband's retirement, albeit by their adult children. Moreover, the trial court found that Wife did not suffer any harm by Husband's failure to notify her of his retirement date. The trial court further determined that the COAP did not require Husband to notify Wife of the amount he was entitled to receive. Finally, the court agreed with Husband that he could not be held in contempt because he was not aware of the specific amount he had to pay Wife.

{¶ 40} After sustaining Husband's objections and overruling the magistrate's contempt finding, the trial court overruled Wife's objection regarding the penalty imposed as moot.

{¶ 41} In her fourth assignment of error, Wife contends that the trial court committed reversible error in overruling the magistrate's decision and not finding Husband in contempt. She further claims that the trial court erred in overruling her objection regarding the penalty the magistrate imposed because the parties' divorce decree provides for a 30-day jail sentence in the event of a violation. We agree with Wife that the trial court abused its discretion in overruling the magistrate's decision regarding the finding of contempt because Husband failed to

pay Wife her 21 percent share of his pension, or make reasonable efforts to comply with the divorce decree.

{¶ 42} Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. *Kaput v. Kaput*, 2011-Ohio-10, ¶ 9 (8th Dist.). Pursuant to R.C. 2705.02, the disobedience of, or resistance to, a court order may be punished for a contempt. Thus, a party's failure to comply with the property division in a divorce decree is subject to contempt proceedings. *Chojnowski v. Chojnowski*, 2003-Ohio-298, ¶ 19 (8th Dist.). "A party may utilize contempt proceedings to enforce [a] property settlement provision contained in a separation agreement, which is subsequently incorporated into a divorce decree." (Cleaned up.) *Romans v. Romans*, 2006-Ohio-6554, ¶ 10 (9th Dist.).

{¶ 43} A prima facie case of contempt is shown where the divorce decree is before the court along with proof of the alleged contemnor's failure to comply with the decree. *Dzina v. Dzina*, 2004-Ohio-4497, ¶ 63 (8th Dist.). "A person charged with contempt for violation of a court order may defend by proving it was not in his power to obey the order." *Peach v. Peach*, 2003-Ohio-5645, ¶ 37 (8th Dist.).

{¶ 44} The relevant provisions of the parties' divorce decree provide:

Husband and Wife will execute a Qualifying Domestic Relations Order with respect to Husband's Civil Service Retirement System retirement benefits in which;

. . .

(c) Until the joint and survivor annuity shall take effect, Wife will receive 21% of Husband's annual accrued benefit as set forth in his

2002 Personal Benefits Statement, Form PBA 10, plus all cost of living adjustments applicable to her 21% of these benefits. Wife will begin receiving these benefits upon Husband's retirement. Husband will receive the balance of said accrued account.

{¶ 45} The relevant provision of the COAP provides:

16. <u>Notice of Pending Retirement</u>. [Husband] shall be required to notify [Wife] in writing, within thirty (30) days prior to his actual date of retirement. Such notice shall indicate his intentions to retire and his elected benefit commencement date. The notice shall be sent via regular, first class mail. For this purpose, [Wife] shall notify [Husband] of any changed [sic] in [Wife's] mailing address.

{¶ 46} The trial court overruled the magistrate's contempt finding by determining that Husband (1) was not required to notify Wife of the amount he was entitled to receive; (2) failed to notify Wife of his retirement, but cured or purged this violation prior to the contempt hearing; and (3) demonstrated an impossibility of compliance relative to the payment of Wife's portion of the annuity. We will address each in turn.

{¶ 47} We first conclude that the trial court correctly overruled the magistrate's decision finding Husband in contempt for failing to notify Wife of "the amount [Husband] was entitled to receive" because this was not a requirement in a court order. Neither the divorce decree nor the COAPs required Husband to notify Wife of the pension amount Husband was entitled to receive.

{¶ 48} We also find that the trial court did not abuse its discretion in overruling the magistrate's decision that found Husband in contempt for failing to notify Wife in writing 30 days prior to his retirement. Husband admitted that he did not notify Wife of his intention to retire as required under the 2004 and 2016

COAPs. Accordingly, Wife satisfied her burden of demonstrating that Husband violated the COAP.

{¶ 49} Husband contended that his noncompliance should not warrant a contempt finding because the violation was cured or purged prior to Wife filing her show-cause motion. The trial court, relying on *Merritt v. Merritt*, 1992 Ohio App. LEXIS 2529 (10th Dist. May 12, 1992), found that despite his failure to abide by the agreement, he purged himself prior to being found in contempt and this violation was cured prior to the evidentiary hearing on Wife's show-cause motion. *See Merritt* (finding that a party can purge himself prior to the contempt hearing); *Perry v. Emmett*, 1988 Ohio App. LEXIS 2537 (8th Dist. June 16, 1988) (finding no abuse of discretion when the trial court determined the contemnor purged himself prior to the hearing).

{¶ 50} Although we agree that the evidence shows that Wife became aware of his retirement, this awareness did not come from Husband — the obligated party. Rather, Wife discovered his retirement only after their adult children told her about his retirement. Nevertheless, we do not find that the trial court exercised its discretion in an unwarranted manner because there was no evidence that Wife was harmed by Husband's failure to personally notify her of his retirement. As the trial court found, Husband still took the requisite steps to apply for his benefits and designate Wife as a beneficiary as set forth in the divorce decree and COAPs. Whether he ultimately complied with his obligations by paying Wife will be further

addressed, but we find no abuse of discretion in the court's decision regarding the notification requirement.

{¶ 51} We find, however, that the trial court abused its discretion in overruling the magistrate's decision by sustaining Husband's objection that he should not be held in contempt for failing to pay Wife her 21 percent share of his pension because compliance with the divorce decree was an impossibility.

{¶ 52} The defendant bears the burden to prove an inability to comply, and absent that proof, a contempt finding is appropriate. *Burks v. Burks*, 2019-Ohio-4292, ¶ 22 (2d Dist.). As a general rule, impossibility-of-performance is a valid defense against a contempt charge. *Donaldson v. Donaldson*, 2024-Ohio-4597 (5th Dist.), citing *Cox v. Cox*, 2015-Ohio-1660, ¶ 12 (10th Dist.). For purposes of contempt, "[a] party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why [he or] she is unable to comply with the court's order." *In re I.L.J.*, 2020-Ohio-5434, ¶ 10 (8th Dist.), quoting *Briggs v. Moelich*, 2012-Ohio-1049, ¶ 15 (8th Dist.), citing *Lahoud v. Tri-Monex, Inc.*, 2011-Ohio-4120, ¶ 54 (8th Dist.).

{¶ 53} In this case, Wife established, and Husband admitted, that Husband violated the divorce decree by failing to pay her 21 percent of his pension from the date of his retirement in 2017 until the date of the magistrate's hearing conducted in September 2024. Accordingly, Wife satisfied her burden of demonstrating a violation of a court order.

{¶ 54} Husband contended, and the trial court agreed, that his noncompliance was because of an impossibility or inability because the 2004 and 2016 COAPs were rejected since they provided for a percentage, rather than a specific dollar amount. The trial court found Husband's argument persuasive: "Husband asserts that he cannot be held in contempt due to his lack of knowledge regarding the specific dollar amount owed to Wife." We are not persuaded. This is not a situation where Husband is accused of not paying a "specific amount." This is a situation where Wife has not received any payment from his pension as required under the divorce decree.

{¶ 55} Although the record reveals that there was disagreement between the parties as to what specific amount dollar amount would equal 21%, thus making an agreed-upon COAP difficult, it was Husband's obligation to pay Wife this amount. Husband knew Wife was not receiving her 21% share because he had been receiving the entire monthly annuity benefit, including Wife's share, since 2017. Husband unilaterally decided, based on his own calculations, what he believed 21% would equal, and rather than paying Wife directly, he started placing that amount in a personal bank account that was inaccessible to Wife during that timeframe. During his deposition, Husband justified his deposit into a bank account rather than paying Wife directly because he believed Wife would not acknowledge the money as payments in accordance with the divorce decrees but would classify them as "gifts."

{¶ 56} Despite his belief, from 2017 until 2024, Husband did not initiate any proceeding in court at any time to seek guidance on how to effectuate Wife receiving

her share or at least to establish that any payments were not "gifts" but in accordance with the divorce decree. In fact, it was only after Wife was forced to file another motion to show cause in 2024 that Husband contacted David Kelley with the QDRO Group for an expert opinion and report on what the appropriate amounts and calculations would be for the parties to execute a proper and acceptable COAP. Husband's actions or lack thereof do not demonstrate reasonable steps to comply with a court order.

{¶ 57} At the time of the magistrate's hearing, Husband admitted that he knew Wife had not been receiving her 21% share of his pension as early as 2017 and admitted that he had not paid Wife any money directly to comply with the divorce decree. Accordingly, we cannot say Husband satisfied his burden of demonstrating an impossibility to comply with the divorce decree or that he made reasonable efforts to comply. The trial court abused its discretion in finding otherwise. We reverse the trial court's decision and find that Husband is in contempt of the divorce decree.

{¶ 58} We disagree with Wife's assertion, however, that the divorce decree provided for a 30-day jail sentence for a contempt violation. Our review of the divorce decree does not reveal any such requirement. Moreover, Wife's motions to show cause did not rely on any specific provision in the divorce decree regarding contempt but rather relied on R.C. Ch. 2705 et seq. and the penalties associated under that Chapter. *See* R.C. 2705.05 (setting forth discretionary penalties for contempt).

{¶ 59} Based on the foregoing, Wife's fourth assignment of error is sustained, in part, and the case is remanded for consideration of an appropriate penalty for Husband's failure to comply with the divorce decree and any purge conditions.

## C. Attorney Fees

{¶ 60} In her first assignment of error, Wife contends that the trial court committed reversible error by overruling her objections that challenged the magistrate's decision denying her an award of attorney fees. She claims, as she did in her objections, that the trial court did not have jurisdiction to order each party to pay their own attorney fees because the parties' Separation Agreement provided that the defaulting party was responsible for reasonable attorney fees.

{¶ 61} This court applies an abuse-of-discretion standard of review to the domestic relations court's decision to grant attorney fees. *Dureiko v. Dureiko*, 2010-Ohio-5599, ¶ 26 (8th Dist.).

{¶ 62} Part 7 of the Separation Agreement provides:

7. ENFORCEMENT EXPENSE

That if either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provision of this Agreement, then in such case, the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connections [sic] with such enforcement proceedings.

{¶ 63} The trial court relied on R.C. 3105.73 regarding post-decree motions for attorney fees and for the proposition that "there are no automatic attorney fees in domestic relations court." *See Packard v. Mayer-Packard*, 2005-Ohio-4392, ¶ 8

(8th Dist.). The court acknowledged the parties' agreement in the divorce decree about the defaulting party paying reasonable attorney fees, but concluded that "there are no reasonable fees to be awarded" because both parties' actions resulted in the litigation because they both had the duty to facilitate the COAP.

{¶ 64} Although the record supports the trial court's observation about the conduct of the parties, the record clearly shows that in 2017, Wife initiated a show cause proceeding because Husband had not complied with his obligations under the divorce decree. Even after the 2017 dispute was dismissed, Wife again had to file another motion to show cause in 2024 because Husband still had not paid her any share of his pension benefits, despite him receiving his full benefits, including Wife's share.

{¶ 65} Whether by fault of the parties themselves, or by their counsel, the dispute over the COAP has been ongoing for close to ten years. But the record shows that Wife has not received any portion of Husband's pension during that time. Although some of the delay may be attributed to Wife and her counsel, the Separation Agreement provides that the defaulting party shall pay reasonable attorney fees. As previously determined, Husband defaulted under the Separation Agreement and subsequent COAP, requiring Wife to initiate litigation to enforce the provisions in those agreements. Pursuant to the plain language of the divorce decree, Wife is entitled to reasonable attorney fees— zero fees are not reasonable fees.

{¶ 66} Accordingly, Wife's first assignment of error is sustained, and the case is remanded to the trial court for a hearing, calculation, and award of reasonable attorney fees.

## III. Conclusion

{¶ 67} The trial court's decision is affirmed with respect to the amount of arrearages owed, monetary calculations reflecting Wife's 21% of Husband's accrued pension benefit, entitlement to unused sick leave, and any provisions for their adult children as contingent beneficiaries.

{¶ 68} The trial court's decision is reversed regarding the contempt finding and award of attorney fees. The case is remanded for the trial court to consider an appropriate penalty for Husband's failure to comply with the divorce decree and appropriate purge conditions. The trial court is also to conduct a hearing on attorney fees, after which the trial court shall calculate and award Wife reasonable attorney fees. Finally, this court reiterates the magistrate's recommendation to the parties: "put this issue to bed."

{¶ 69} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LISA B. FORBES, P.J., and
TIMOTHY W. CLARY, J., CONCUR